# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| MANDY PALMUCCI,<br>*Plaintiff,*<br><br>vs.<br><br>TWITTER, INC., GOOGLE LLC, AND<br>FACEBOOK, INC.,<br>*Defendants.* | Civil Action No. 1:18-CV-01165<br><br>Hon.  John Z. Lee |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 3

I.    Plaintiff's Arguments About "Proper" Venue Are Irrelevant:  Defendants Moved Under Section 1404(a), Not 1406(a), And Do Not Contend That Venue Is Improper.................................................................................................... 3

II.    Plaintiff's Arguments Based On *Forum Non Conveniens* Case Law And On Section 2334(d) Are Irrelevant And Contrary To The Section 1404(a) Analysis .............. 5

III.    The Relevant Factors Under Section 1404(a) Support Transferring This Action To The Northern District Of California ............................................................ 7

      A.    A Transfer Is In The Interest Of Justice.................................................. 8

      B.    The Northern District Of California Will Be More Convenient For The Parties And Witnesses......................................................................... 12

IV.    Plaintiff's Forum-Shopping Argument Is Irrelevant And Incorrect ................................ 14

CONCLUSION ................................................................................................... 15

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Dredging Co. v. Miller*,
510 U.S. 443 (1994) ................................................................................................................. 5

*American Bank v. Guerine*,
198 Ill. 2d 511 (2002) .............................................................................................................. 6

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. Tex.*,
571 U.S. 49 (2013) ............................................................................................................... 5, 6

*Bd. of Trs. of the Health & Welfare Dep't v. Kruzan*,
2011 WL 6140530 (N.D. Ill. Dec. 8, 2011) ............................................................................. 4

*Body Sci. LLC v. Bos. Sci. Corp.*,
846 F. Supp. 2d 980 (N.D. Ill. 2012) .................................................................................... 10

*Boim v. Holy Land Found. for Relief & Dev.*,
549 F.3d 685 (7th Cir. 2008) ................................................................................................. 11

*Boim v. Quranic Literacy Inst.*,
291 F.3d 1000 (7th Cir. 2002) ............................................................................................... 11

*Chicago, Rock Island & Pac. R.R. Co. v. Igoe*,
220 F.2d 299 (7th Cir. 1955) ............................................................................................... 7, 9

*Coffey v. Van Dorn Iron Works*,
796 F.2d 217 (7th Cir. 1986) ............................................................................................. 6, 13

*Cohen v. Facebook, Inc.*,
252 F. Supp. 3d 140 (E.D.N.Y. 2017) ................................................................................... 14

*Colon v. Twitter, Inc.*,
No. 6:18-CV-00515, Dkt. 1 (M.D. Fla.) .............................................................................. 3, 15

*Crosby v. Twitter, Inc.*,
– F.3d –, 2018 WL 1570282 (E.D. Mich. Mar. 30, 2018) ............................................ 2, 14, 15

*Crothall Laundry Servs., Inc. v. OSF Health Care Sys.*,
2018 WL 1695364 (N.D. Ill. Apr. 6, 2018) ............................................................................. 7

*Fields v. Twitter, Inc.*,
881 F.3d 739 (9th Cir. 2018) ..................................................................................... 11, 14, 15

*Gonzalez v. Google, Inc.*,
  282 F. Supp. 2d 1150 (N.D. Cal. 2017) ...............................................11, 14, 15

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ........................................................................................6

*Harper v. Ill. Dep't of Corr.*,
  2016 WL 3014835 (N.D. Ill. May 26, 2016) ...................................................7

*In re Hudson*,
  710 F.3d 716 (7th Cir. 2013) ..........................................................2, 5, 7, 9, 12

*Martinez v. Deutsche Bank AG*,
  2017 WL 1366048 (S.D. Ill. Apr. 12, 2017) ..............................................7, 10

*Midwest Precision Servs., Inc. v. PTM Indus. Corp.*,
  574 F. Supp. 657 (N.D. Ill. 1983) ..................................................................13

*Norwood v. Kirkpatrick*,
  349 U.S. 29 (1955) .......................................................................................5, 6

*Pennie v. Twitter, Inc.*,
  281 F. Supp. 3d 874 (N.D. Cal. 2017) .......................................................11, 14

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ........................................................................................6

*Research Automation, Inc. v. Schrader-Bridgeport Int'l., Inc.*,
  626 F.3d 973 (7th Cir. 2010) ......................................................................9, 13

*Rosen v. Spirit Airlines, Inc.*,
  152 F. Supp. 3d 1055 (N.D. Ill. 2015) ...........................................................10

*Siegel v. HSBC Holdings, PLC*,
  283 F. Supp. 3d 722 (N.D. Ill. 2017) ..........................................................7, 10

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) .........................................................................................14

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ......................................................................................3, 4

## STATUTES

18 U.S.C. § 2334(a) ..............................................................................................4

18 U.S.C. § 2334(d) ..........................................................................................6, 7

28 U.S.C. § 1404(a) ................................................................................................2, 3, 15

28 U.S.C. § 1406(a) ........................................................................................................3

## INTRODUCTION

Plaintiff's Opposition (Dkt. 38) does not dispute the essential facts supporting a transfer of this action to the Northern District of California.  This is the third case asserting Anti-Terrorism Act claims arising from the same November 2015 terrorist attacks in Paris, all brought by the same counsel and asserting the same or overlapping factual and legal theories against Twitter, Google, and/or Facebook.  Both of the earlier-filed Paris cases, *Gonzalez* and *Cain*, are pending in the Northern District of California.  All three cases concern activity that took place in the Northern District of California (or abroad), and that district also is home to the vast majority of potential relevant witnesses.  Indeed, Judge Crotty transferred *Cain* from the Southern District of New York to the Northern District of California for the same reasons that support a transfer here:  the "locus of operative facts" relating to Defendants' content policies is in California, and there will be "significant factual overlap in the two actions, such as factual development relating to ISIS and the Paris Attack" and common defenses advanced by Defendants.  *Cain* Transfer Order at 6, 8 (Ex. 3 to Defs.' Transfer Mot., Dkt. 20-4).  That reasoning applies even more forcefully now that there are *three* factually overlapping Paris-related actions—two of which are pending in the Northern District of California, as are seven other actions arising from different terrorist incidents but asserting the same factual and legal challenges to Defendants' content policies.  *See* Mot. at 4-5.

Against all of this, Plaintiff's Opposition rests almost entirely on the contention that her residence in and choice of this District should weigh dispositively against a transfer.  But that is simply not the law.  The cases and statutes Plaintiff cites for this proposition are inapt, as they largely address the different role played by the *forum non conveniens* doctrine where a party seeks dismissal of a case in favor of litigation in a foreign court.  Although these precedents suggest a thumb on the scale in favor of proceeding *in a U.S. court*, they do not control the

question of *which* U.S. court is most appropriate—the question addressed by section 1404(a) and presented here. *See In re Hudson*, 710 F.3d 716, 718 (7th Cir. 2013).

Under section 1404(a), a transfer is appropriate where it would further the "convenience of parties and witnesses" and the "interest of justice." 28 U.S.C. § 1404(a). Plaintiff's choice of forum and her residence in this District are factors in that analysis, but they are not controlling, particularly where the only proposed testimony from Plaintiff and other witnesses from this District would relate to damages—a question that will be moot if the Plaintiff does not prevail on liability. *See Hudson*, 710 F.3d at 719. And Plaintiff has offered nothing to overcome Defendants' strong evidentiary showing that the Northern District of California will be more convenient for the parties and witnesses and that a transfer will serve the interest of justice by avoiding duplicative litigation of the same legal and factual issues in multiple federal district courts and courts of appeals.

Finally, Plaintiff's suggestions of forum shopping are groundless. Plaintiff observes, as did her counsel during the March 8 presentment hearing (*see* Dkt. 39 at 4-6 (Mar. 8, 2018 Tr.)), that Defendants did not move to transfer *Crosby*—a case arising from a different attack that was filed in the Eastern District of Michigan 15 months ago. But as Defendants already explained (*see id.* at 10-11), the circumstances of this case are substantially different from those in *Crosby* at the time it was filed. And notably, events in *Crosby* since the presentment hearing confirm that, if any forum shopping is occurring, it is by Plaintiff's counsel. On March 30, 2018, the court in *Crosby* dismissed all claims with prejudice. *See Crosby v. Twitter, Inc.*, – F.3d –, 2018 WL 1570282 (E.D. Mich. Mar. 30, 2018). Five days later, on April 4, 2018, Plaintiff's counsel filed a brand new action in the Middle District of Florida—brought on behalf of a different set of plaintiffs but arising from *the same attack* and alleging the same factual and legal theories that

2

the *Crosby* court had just rejected.  *Colon v. Twitter, Inc.*, No. 6:18-CV-00515, Dkt. 1 (M.D.

Fla.).  In contrast with that maneuver to relitigate the same, previously-dismissed claims in a

different jurisdiction, Defendants' motion here seeks to transfer this case, at the outset, to the

forum that is already handling two other nearly identical cases.  Given the strong interest in

having closely aligned cases heard in the same District, a transfer is appropriate here.

## ARGUMENT

In an effort to support the assertion that her residence and choice of forum should control,

Plaintiff relies principally on a series of inapplicable cases and authorities that do not involve a

transfer under 28 U.S.C. § 1404(a).  But under the case law that does govern that statute, a

plaintiff's choice of venue is only one factor among many that must be considered in

determining whether to transfer a case, and a transfer is appropriate where proceeding in a

different district would further the convenience of parties and witnesses and the interest of

justice.  Here, those factors strongly support transferring this case to the Northern District of

California, where multiple nearly identical actions are pending and the overwhelming majority of

likely U.S.-based witnesses are located.

**I.      Plaintiff's Arguments About "Proper" Venue Are Irrelevant:  Defendants Moved Under Section 1404(a), Not 1406(a), And Do Not Contend That Venue Is Improper**

Plaintiff's Opposition leads by arguing that venue in this District is "proper" under 18

U.S.C. § 2334(a), responding to Defendants' motion as if it had been filed "*under section*

*1406(a)*"—the provision for dismissal or transfer in the case of improper venue.  Opp. at 2

(emphasis added) (referring to 28 U.S.C. § 1406(a)).  But Defendants did not move under

section 1406; they moved under section 1404(a), which presupposes (as is the case here) that

venue is *proper* in both the transferee and the transferor courts—a point that Defendants

specifically made in their moving papers.  Mot. at 6; *see generally Van Dusen v. Barrack*, 376

U.S. 612 (1964).

Nor does section 2334(a) of the ATA change the analysis:  that provision simply creates a broader range of *proper* venues for ATA cases, whether selected as the plaintiff's initial choice or by a transferor court under section 1404(a).  It states that an ATA action may be filed in "any district where any plaintiff resides or where any defendant resides or is served, or has an agent" (18 U.S.C. § 2334(a)), but does not, as Plaintiff asserts, create a preference for a plaintiff's home forum or require special deference to a plaintiff's choice of venue (Opp. at 3).  Congress allowed ATA plaintiffs to sue in their home districts to ensure that there would be a domestic venue for a case involving international terrorism, where the defendants might be located outside the United States.  The statute does not express a preference for any specific U.S. district, but rather allows suit in "any" such district where "any plaintiff" or "any defendant" resides.  18 U.S.C. § 2334(a).

If anything, section 2334(a) *supports* Defendants' motion:  the Supreme Court has explained that, in enacting section 1404, Congress was "particularly aware of the need for provisions to mitigate abuses stemming from broad federal venue provisions" and wanted "to counteract the inconveniences that flowed from the venue statutes by permitting transfer to a convenient federal court."  *Van Dusen*, 376 U.S. at 635.  The availability of a broad range of venue options under section 2334(a) thus counsels in favor of—and not against—a close evaluation of the convenience and interest of justice factors under section 1404.  *Cf. Cain* Transfer Order at 12 n.1 (Ex. 3, Dkt. 20-4) (noting this point but not reaching it).  For this reason, courts routinely transfer cases brought under statutes with broad venue provisions, even when filed by plaintiffs in their home forum(s).  *See, e.g.*, *Bd. of Trs. of the Health & Welfare Dep't v. Kruzan*, 2011 WL 6140530, at *6 (N.D. Ill. Dec. 8, 2011) ("To the extent that the Seventh Circuit addressed transfer of venue, it indicated that § 1404 should be used to protect

defendants' legitimate interest, despite [a] broad venue provision.").

## II.   Plaintiff's Arguments Based On *Forum Non Conveniens* Case Law And On Section 2334(d) Are Irrelevant And Contrary To The Section 1404(a) Analysis

Plaintiff next offers a series of *forum non conveniens* precedents as purported support for her assertion that her choice of her home venue should control.  Opp. at 2-4.  But the Supreme Court and the Seventh Circuit repeatedly have made clear that section 1404(a) displaced preexisting *forum non conveniens* precedent "when the question is the superior convenience of litigating a case in one federal district court rather than another."  *Hudson*, 710 F.3d at 718; *see Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994).  The only significant role for *forum non conveniens* in the U.S. federal courts is where a party seeks *dismissal* in favor of a *foreign* (i.e., non-U.S.) court (*see Am. Dredging*, 510 U.S. at 449 n.2)—a circumstance where considerations favoring the provision of a U.S. federal forum are "quite different" from those involved in deciding *which* among available U.S. districts is the most convenient under section 1404(a).  *Norwood v. Kirkpatrick*, 349 U.S. 29, 31-32 (1955) (section 1404 was "intended to permit courts to grant transfers upon a lesser showing of inconvenience"); *accord Hudson*, 710 F.3d at 718-19 (section 1404 displaced the *forum non conveniens* doctrine and its words "should be considered for what they say, not with preconceived limitations derived from the *forum non conveniens* doctrine").[1]  Courts also have noted that *forum non conveniens* results in dismissal of the entire action, a much harsher result, whereas section 1404(a) results only in a *transfer* to another federal court.  *See Hudson*, 710 F.3d at 718.

In light of the distinction between the two bases for relief, the *forum non conveniens* cases that Plaintiff cites do not govern the section 1404(a) analysis.  Those cases either predate

---

[1]  The doctrine also may come into play in the relatively unusual circumstance where a forum selection clause specifies only a state court.  *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. Tex.*, 571 U.S. 49, 60-61 (2013).

section 1404 altogether (*e.g.*, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)) or involve a

*forum non conveniens* motion for dismissal in favor of a non-U.S. court (*e.g.*, *Piper Aircraft Co.

v. Reyno*, 454 U.S. 235, 255 (1981)).  Thus, even if it were true that, in applying the *forum non*

*conveniens* doctrine, the plaintiff's choice of venue controls unless "rare circumstances make

honoring this choice inequitable" (Opp. at 2-4), that simply is not the case in the section 1404

context.[2]  To the contrary, as the Supreme Court explained in *Norwood*, section 1404(a) was

"intended to permit courts to grant transfers upon a lesser showing of inconvenience" than under

*forum non conveniens*.  349 U.S. at 32; *accord Atl. Marine Constr. Co. v. U.S. Dist. Court for*

*W. Dist. Tex.*, 571 U.S. 49, 62 n.6 (2013) (under section 1404(a), court must give "some weight

to the plaintiffs' choice of forum"); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th

Cir. 1986).

Plaintiff exacerbates her misplaced reliance on *forum non conveniens* law by citing 18

U.S.C. § 2334(d) for the proposition that any proposed alternative venue for ATA claims must be

"significantly more convenient than the chosen forum."  Opp. at 8 (emphasis omitted).  But this

provision, like the cases Plaintiff cites, relates to efforts to *dismiss* a U.S.-filed action in favor of

*a non-U.S. court.  See* 18 U.S.C. § 2334(d) (ATA claims may be "dismiss[ed]" when, among

other things, a "foreign court is significantly more convenient and appropriate").  This statutory

*forum non conveniens* provision for ATA claims favors allowing such claims to proceed in a

U.S. court, as opposed to relegating an ATA plaintiff to a foreign court.  But it does not speak to

---

[2]  Plaintiff also cites stray language from what appears to be a series of Illinois state court cases applying that state's *forum non conveniens* doctrine to situations involving different Illinois counties.  *Compare* Opp. at 11 (quoting, without citation, language referring to the "burden of jury duty on residents of a county with little connection to the litigation"), *with, e.g.*, *American Bank v. Guerine*, 198 Ill. 2d 511, 515 (2002) (using the same language to describe the test for state courts in one county to decline jurisdiction where another county has a closer connection to the action).  Obviously, these state court cases (even if Plaintiff had actually cited them) have no bearing on the present motion.

the question of *in which* U.S. district the case should proceed, nor does it say anything whatsoever about the standards for *transferring* an action.  *See id.*  As to those questions, the more flexible 1404(a) standard governs.  *See, e.g.*, *Martinez v. Deutsche Bank AG*, 2017 WL 1366048 (S.D. Ill. Apr. 12, 2017) (granting 1404(a) transfer motion in ATA case); *Siegel v. HSBC Holdings, PLC*, 283 F. Supp. 3d 722 (N.D. Ill. 2017) (same).

Under the section 1404(a) standard, it is well settled that a plaintiff's choice to file in her home forum will not preclude a transfer that is warranted based on the convenience to parties and witnesses and the interest of justice.  *See Hudson*, 710 F.3d at 718-19.  Indeed, the Seventh Circuit has observed that a plaintiff's choice of forum has "minimal value" in the section 1404(a) analysis where—as here—"none of the conduct complained of occurred in the forum selected by the plaintiff."  *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955); *see also Crothall Laundry Servs., Inc. v. OSF Health Care Sys.*, 2018 WL 1695364, at *5-6 (N.D. Ill. Apr. 6, 2018) (same); *Harper v. Ill. Dep't of Corr.*, 2016 WL 3014835, at *3 (N.D. Ill. May 26, 2016) (Lee, J.) (plaintiff's choice of forum "is entitled to little deference" where "[n]one of the events underlying his claims took place here").  Plaintiff offers no response to this established authority.

## III.  The Relevant Factors Under Section 1404(a) Support Transferring This Action To The Northern District Of California

As Defendants showed in their moving papers, a transfer to the Northern District of California would serve the interest of justice and the convenience of the parties and witnesses, given that two other ATA actions arising out of the same Paris attacks are pending in that district (along with seven other similar ATA actions asserting similar theories of liability with respect to other attacks), and the vast majority of witnesses knowledgeable about Defendants' content review policies reside there.  Although Plaintiff takes issue with various details of Defendants'

showing, she has offered no evidence whatsoever in response to Defendants' declarations and cannot overcome the strong reasons for transferring this case.

### A.     A Transfer Is In The Interest Of Justice

There is no dispute that, in assessing the interest of justice, the Court should analyze the desirability of adjudicating related litigation in the same forum, the relative familiarity of the candidate courts with the applicable law, the relationship of the community to the underlying events, and the ability to ensure a speedy trial.  *See* Mot. at 6-7; Opp. at 4.

As Defendants have shown, a transfer of this action to the Northern District of California will serve "the interest of justice" based on: (1) the pendency of the two other Paris-related actions, involving nearly identical legal theories and factual issues; (2) Judge Crotty's decision to transfer one of those actions (*Cain*) from New York to the Northern District of California so that the two Paris-related cases could proceed in the same District; (3) the seven other pending cases in that District involving substantially similar theories (five of which were filed by the same counsel representing Plaintiff here); (4) the duplicative judicial efforts and risk of inconsistent decisions that would be created (at both the district court and appellate court levels) absent a transfer; (5) the far closer connection that the Northern District of California has to the factual allegations underlying this case and the others like it, all of which challenge Defendants' underlying policies and practices for addressing terrorist content; and (6) the lesser docket congestion in the Northern District of California.  Mot. at 6-12.

In response to all of this, Plaintiff asserts only that she "is a resident of this judicial district" (Opp. at 5), that this Court has "familiarity with this case's applicable law" (*id.* at 6), that the "community and its residents have a strong relationship to this litigation" (*id.*), and that docket congestion statistics are "irrelevant" because of "the highly complex nature of the case at hand" (*id.* at 7).  These arguments—none of which is supported by evidence—do not favor

retaining this case in this District.

Plaintiff first tries to brush aside the mandatory "interest of justice" factors, arguing that her "chosen forum is entitled to substantial deference which outweighs any of Defendants' claimed interests in justice," and that her residence in this district renders the ATA transfer cases Defendants cite "inapplicable." Opp. at 3, 5. But, as discussed above, Plaintiff's choice of her home venue is not controlling, particularly where "none of the conduct complained of occurred in the forum selected by the plaintiff." Mot. at 15 (quoting *Chicago, Rock Island*, 220 F.2d at 304). The Seventh Circuit held as much in *Hudson*, where it upheld a district court's order transferring an action out of the plaintiff's home forum because (as here), none of the relevant events occurred in the plaintiff's home forum and the majority of the potentially relevant witnesses did not reside there. 710 F.3d at 717, 719.

In fact, in this circuit, the "interest of justice" factor may be "determinative" in a decision to transfer. *Research Automation, Inc. v. Schrader-Bridgeport Int'l., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Unsurprisingly, in *every* transfer case that Plaintiff cites, the court has considered these factors: not a single court disregarded the "interest of justice" factors and relied solely on the plaintiff's residence, as Plaintiff erroneously invites the Court to do here. *See* Opp. at 2-4, 9, 11 (citing cases). The same was true in the ATA cases cited by Defendants. In *Cain*, for example, the court noted that "[o]ne of the most important factors considered by courts in evaluating a motion to transfer is the existence of similar litigation in the transferee district." *Cain* Transfer Order at 5 (Ex. 3, Dkt. 20-4) (citation omitted). Judge Crotty found that this factor "strongly favors transfer" given the "significant factual and legal overlap" between the two cases, "the potential for conflicting results," the potential "[c]oordination of … discovery," and "even further significant judicial efficiencies." *Id.* at 7. Judge Crotty also noted that the relevant

content policy decisions of Defendant Twitter were made in the Northern District of California, a point that he found "strongly favors transfer."  *Id.* at 8.  Likewise, in *Martinez v. Deutsche Bank AG*, the court analyzed all of the section 1404(a) factors and found that the presence of a "nearly identical suit" in the transferee district "heavily weighs in favor of transfer."  2017 WL 1366048 at *5; *see also Siegel*, 283 F. Supp. 3d at 783 (transfer consistent with efficient administration of justice where related litigation against defendant was pending in transferee district).

Applying the interest of justice factors here, the Northern District of California has a much closer relationship with this action than the Northern District of Illinois, despite Plaintiff's Illinois residence.  The complaint contains a number of allegations relating to events outside the United States, including the rise of ISIS, its commission of various terrorist acts worldwide, and specific terrorist acts allegedly planned by ISIS in Europe and committed in Paris.  Beyond that, Plaintiff alleges that Defendants' policies for controlling terrorist content were insufficient, and that Defendants should have done more to prevent alleged content supportive of ISIS from appearing on their platforms—all contentions that, as Defendants showed through detailed declarations, center around Northern California and not the Northern District of Illinois.  *See* Mot. at 11-12; Exs. 5-8, Dkts. 20-6–20-9.  Notwithstanding Plaintiff's assertions that "Defendants have not produced any evidence" supporting their motion, and that Defendants' declarations are "untested self-serving statements, even if under oath" (Opp. at 6-7), courts routinely rely on such evidence when evaluating transfer motions.  *See, e.g.*, *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1060-62 (N.D. Ill. 2015); *Body Sci. LLC v. Bos. Sci. Corp.*, 846 F. Supp. 2d 980, 992-96 (N.D. Ill. 2012).

Plaintiff deems it "notable" that the Northern District of California did not designate *Cain* a "related case" to *Gonzalez* after *Cain* arrived in that District (Opp. at 5), but this has no bearing

on section 1404(a).  The local rules or criteria that a district may use to define a "related case" cannot override the federal statutory standard for a transfer, which directs courts to consider which among the available districts will best serve the interest of justice and the convenience of witnesses.  As to that inquiry, Plaintiff concedes that *Gonzalez* and *Cain* "involve the same Paris attack, had essentially the same Plaintiffs, and additionally were alleging essentially the same bases for liability" (*id.* at 5)—all factors that supported Judge Crotty's decision to transfer *Cain* and that (with the exception of the overlap in plaintiffs) support transferring this action as well. *See* Mot. at 7-8.  Moreover, if this trilogy of Paris-related cases survives a motion to dismiss, transfer of this case now would allow (through consolidation or another mechanism) a single district judge to coordinate discovery and other pretrial proceedings across all cases.

Plaintiff next argues that this Court has "extensive knowledge on the applicable terrorism law at issue in this case" because the Seventh Circuit has issued two opinions in the last two decades related to material support of terrorism under the ATA, both in the same set of cases. Opp. at 5-6 (citing *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000 (7th Cir. 2002) and *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685 (7th Cir. 2008)).  But the courts in the Ninth Circuit and the Northern District of California have considered extensively—and much more recently—the *exact* legal theories and duplicative allegations asserted in this case.  *See Fields v. Twitter, Inc.*, 881 F.3d 739 (9th Cir. 2018); *Gonzalez v. Google, Inc.*, 282 F. Supp. 2d 1150 (N.D. Cal. 2017); *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874 (N.D. Cal. 2017), *appeal pending*. Moreover, in both *Gonzalez* and *Pennie*, the courts considered the impact of the 2016 Justice Against Sponsors of Terrorism Act, which figures prominently both in Plaintiff's complaint and in the California cases, and which significantly postdates the Seventh Circuit's *Boim* opinions.

Finally, Plaintiff contends that the significant difference in case processing statistics

between the two districts is "irrelevant" because this case is "highly complex."  Opp. at 7.  But courts in this and other districts regularly consider such statistics when considering a motion to transfer.  *See* Mot. at 12.  Plaintiff offers no support for distinguishing "an average civil case" from this ostensibly "highly complex" one (Opp. at 7)—and although Defendants do not agree that these very similar cases are complex, if anything, complexity would weigh in favor of having one district consider them all, rather than duplicating judicial effort in multiple districts.[3]

## B.   The Northern District Of California Will Be More Convenient For The Parties And Witnesses

As Defendants observed in their motion, the allegations of the complaint make clear that the great majority of relevant United States-based witnesses, evidence, and operative facts will be located in the Northern District of California (or abroad), making that District more convenient for the parties and witnesses.  Mot. at 12-15.

In response, Plaintiff does *not* argue that the Northern District of Illinois is more convenient; rather, she asserts that this Court "provides considerable and the substantially same access to convenience as the North[ern] District of California" and contends that "many of the witnesses who will establish Palmucci's injuries are located in this district."  Opp. at 10.  But the Seventh Circuit has made clear that the presence of the plaintiff and other potential witnesses on the issue of the plaintiff's injury is not controlling in considering a transfer motion, particularly where an adverse decision on liability may obviate any considerations of damages.  *See Hudson*,

---

[3]  As part of her effort to discredit the case processing statistics, Plaintiff asserts that the parties in *Gonzalez* "are still waiting on a ruling on a motion to dismiss for a case that was file[d] in June of 2016."  Opp. at 7.  This contention ignores that the progress of that case was slowed not by the "complex" nature of the plaintiffs' claims, but rather by plaintiffs' own procedural maneuvering, which included a stay motion necessitated by confusion as to which plaintiffs had standing, as well as repeated amendments to the complaint, including in response to the Court's ruling on Defendant's motion to dismiss.  *See, e.g.*, *Gonzalez v. Google LLC*, No. 16-cv-3282-DMR (N.D. Cal.), Dkt. 59 (Motion to Stay), Dkt. 111 (Third Amended Complaint).

710 F.3d at 719.  In any event, Plaintiff offers no evidence to support her assertion about the

location of her potential witnesses, or whether she actually sought medical treatment in this

District or elsewhere.[4]  Plaintiff's conclusory and unsupported statements merit little weight,

especially as compared with the sworn declarations submitted by Defendants.  *See Midwest*

*Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983) (court should

"consider only undisputed facts presented to the Court by affidavit, deposition, stipulation or

other relevant documents," not "[m]ere allegations").

Significantly, Plaintiff does not assert that it would be *inconvenient* for her or her counsel

to prosecute this action in the Northern District of California—an assertion that, at least as to her

counsel, would be impossible to make, given that they have filed multiple similar actions in that

District.  Rather, she asserts that "there is no difference in the convenience," noting that

witnesses can be deposed in California regardless of venue and that documents can be

"electronically transmitted worldwide."  Opp. at 10-11.  That is true so far as depositions and

documents are concerned, but it does not mean, as Plaintiff contends, that "[t]he location of

Defendants' witnesses is irrelevant to the argument at hand."  *Id.* at 10.  In fact, the opposite is

true:  courts routinely consider "the availability of and access to witnesses," even in an age of

electronic document production.  *Research Automation, Inc.*, 626 F.3d at 978.  That is because,

even if the location of witnesses did not matter for purposes of *depositions*, it bears on the

"convenience of parties and witnesses" if the case were to proceed to *trial*.[5]

---

[4]  The complaint contains no allegations related to Plaintiff's injury except that she "suffered,
and will continue to suffer, severe psychological and emotional harm."  Compl. ¶ 505.  The
Opposition also incorrectly states that Plaintiff is pursuing "state law claims for … wrongful
death" (Opp. at 1), but the complaint contains no such claim (nor could it).

[5]  Plaintiff invokes *Coffey*, 796 F.2d at 219-20, for the proposition that the transferee court must
be "clearly more convenient," a showing that Defendants have made here.  And in contrast to the
moving party in *Coffey*, who provided *no evidence* that a transfer would be more convenient,

## IV.    Plaintiff's Forum-Shopping Argument Is Irrelevant And Incorrect

Plaintiff's final salvo is to assert that Defendants, by filing this motion, "are seeking to avoid the local Court rules" and are engaged in "brazen forum shopping."  Opp. at 12-13. Plaintiff argues that, because Defendants did not seek to transfer *Crosby* from the Eastern District of Michigan, their real motive must be to avoid this Court's Mandatory Initial Discovery Pilot Project (MIDP).  *Id.* at 12.  This argument is meritless.

As an initial matter, whether Defendants sought to transfer a different case, under different circumstances, is irrelevant to the present motion.  Section 1404(a) is meant to give district courts discretion to decide transfer motions through a "case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).  And, as noted above, the circumstances of this case are different from those in *Crosby*: when *Crosby* was filed, only a few other ATA cases were pending against Defendants, and no other such case had been filed arising from the same alleged terrorist act—in that case, the Orlando nightclub shooting.  Moreover, Defendants have separately presented grounds for relief from the MIDP in this case (Dkt. 24), so there would be no need to seek a transfer of the action to accomplish the same end.  *See* Opp. at 13.  Plaintiff's forum shopping argument is baseless speculation.  The idea that "discovery requests … would obviously produce dispositive information related to Plaintiff's claims" (*id.* at 12) is especially fanciful, particularly when every court to consider the allegations advanced in Plaintiff's complaint has concluded that, *even if taken as true*, they would not make out any viable claim against Defendants.[6]

---

Defendants here have submitted detailed declarations establishing that the vast majority of potentially relevant facts and witnesses will be found in Northern California (or abroad).

[6]  *See Fields*, 881 F.3d 739, *aff'g* 217 F. Supp. 3d 1116 (N.D. Cal. 2016); *Crosby*, 2018 WL 1570282; *Gonzalez*, 282 F. Supp. 3d 1150; *Pennie*, 281 F. Supp. 3d 874; *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140 (E.D.N.Y. 2017).

Indeed, if anyone can be fairly accused of forum shopping in these cases, it is Plaintiff's counsel. Plaintiff's counsel filed this action in this District only *after* receiving an adverse ruling from the Northern District of California on Google's initial motion to dismiss the Paris-related complaint in *Gonzalez*, and *after* the Ninth Circuit laid the groundwork in *Fields* for dismissal of Plaintiff's counsel's other Northern District of California cases. *See Fields*, 881 F.3d 739; *Gonzalez*, 282 F. Supp. 3d 1150. And recent developments suggest that this timing is no coincidence. On March 30, 2018, the Eastern District of Michigan issued a comprehensive ruling dismissing the *Crosby* case with prejudice and rejecting each of the plaintiffs' legal theories against Defendants. 2018 WL 1570282. Less than a week later, Plaintiff's counsel filed a new action arising from the same Orlando nightclub shooting that was at issue in *Crosby*—but this time in the Middle District of Florida. *See Colon*, No. 6:18-CV-00515, Dkt. 1 (M.D. Fla. Apr. 4, 2018). These tactics suggest that Plaintiff's counsel continues to search for a court that— unlike all others to consider these cases to date (*see* note 6, *supra*)—might give refuge to their groundless legal and factual theories. In contrast, Defendants are merely seeking to have this case, which is virtually identical to two others arising from the same attack, handled in the district where Plaintiff's counsel chose to file the first of these cases. That is an entirely appropriate use of section 1404(a).

## CONCLUSION

For all of these reasons and those presented in Defendants' moving papers, Defendants respectfully request that this Court transfer venue of this action, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Northern District of California.

April 12, 2018

*/s/ Brian M. Willen* (w/ consent)

BRIAN M. WILLEN (*pro hac vice*)
bwillen@wsgr.com
WILSON SONSINI
 GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 999-5800
Facsimile:   (212) 999-5899

LAUREN GALLO WHITE (*pro hac vice*)
lwhite@wsgr.com
WILSON SONSINI
 GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

DEBRA BERNARD
dbernard@perkinscoie.com
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone:  (312) 324-8559
Facsimile:   (312) 324-9559

**Attorneys for Defendant**
**GOOGLE LLC**

Respectfully submitted,

By:  */s/ Kristin A. Linsley*

KRISTIN A. LINSLEY (*pro hac vice*)
klinsley@gibsondunn.com
JOSEPH C. HANSEN (*pro hac vice*)
jhansen@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:  (415) 393-8200
Facsimile:   (415) 393-8306

NATHAN P. EIMER
neimer@eimerstahl.com
SUSAN RAZZANO
srazzano@eimerstahl.com
Eimer Stahl LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone:  312.660.7600
Facsimile:  312.692.1718

**Attorneys for Defendant**
**FACEBOOK, INC.**

*/s/ Patrick J. Carome* (w/ consent)

PATRICK J. CAROME (*pro hac vice*)
patrick.carome@wilmerhale.com
ARI HOLTZBLATT (*pro hac vice*)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone:  (202) 663-6000
Facsimile:   (202) 663-6363

RONALD S. SAFER
rsafer@rshc-law.com
Riley Safer Holmes & Cancila LLP
Three First National Plaza
70 West Madison Street, Suite 2900
Chicago, IL 60602
Telephone:  (312) 471-8736
Facsimile:   (312) 471-8701

**Attorneys for Defendant**
**TWITTER, INC.**

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2018, I caused the foregoing Reply Memorandum in Support of Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404(a), and accompanying papers, to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/      Kristin A. Linsley*
KRISTIN A. LINSLEY (*pro hac vice*)
klinsley@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street Suite 3000
San Francisco, CA 94105
Telephone:  (415) 393-8395
Facsimile:   (415) 374-8471