KRISTIN A. LINSLEY (CA SBN 154148)
klinsley@gibsondunn.com
JOSEPH A. GORMAN (CA SBN 267553)
jgorman@gibsondunn.com
JOSEPH TARTAKOVSKY (CA SBN 282223)
jtartakovsky@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendant*
**FACEBOOK, INC.**

DAVID H. KRAMER (CA SBN 168452)
dkramer@wsgr.com
KELLY M. KNOLL (CA SBN 305579)
kknoll@wsgr.com
WILSON SONSINI
   GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

BRIAN M. WILLEN (*pro hac vice*)
bwillen@wsgr.com
LAUREN GALLO WHITE (CA SBN 309075)
lwhite@wsgr.com
WILSON SONSINI
   GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas
40th Floor
New York, NY 10019
Telephone: (212) 999-5800

*Attorneys for Defendant*
**GOOGLE LLC**

SETH P. WAXMAN (*pro hac vice*)
seth.waxman@wilmerhale.com
PATRICK J. CAROME (*pro hac vice*)
patrick.carome@wilmerhale.com
ARI HOLTZBLATT (*pro hac vice*)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

MARK D. FLANAGAN (CA SBN 130303)
mark.flanagan@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Defendant*
**TWITTER, INC.**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MANDY PALMUCCI,<br><br>             Plaintiff,<br><br>      v.<br><br>TWITTER, INC., et al.,<br><br>             Defendants. | CASE NO.: 3:18-CV-03947-WHO<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Judge: Hon. William H. Orrick<br>Hearing Date: December 5, 2018 |

# TABLE OF CONTENTS

Page

I.   SECTION 230 REQUIRES DISMISSAL OF ALL CLAIMS ...........................................1

     A.   JASTA Did Not Impliedly Repeal Or Abrogate Section 230 ................................2

     B.   Section 230 Bars Plaintiff's "Functionality" Theory ..............................4

     C.   Targeting Ads And Content Does Not Make Defendants Content Providers.........5

II.  ALL OF PLAINTIFF'S ATA DIRECT LIABILITY CLAIMS FAIL UNDER
     *FIELDS*........................................................................................6

     A.   Plaintiff Does Not Plausibly Allege Proximate Cause ............................7

     B.   Defendants Did Not Commit An "Act Of International Terrorism".....................8

          1.   Plaintiff Waived Her Claims Under Sections 2339A And 2339C(c)..........8

          2.   Plaintiff Fails To Allege A Violation Of Section 2339B ........................8

          3.   Plaintiff Fails To Allege A Violation Of IEEPA ....................................10

          4.   Plaintiff Fails To Plead The Remaining Required Elements Of "An
               Act International Terrorism" Committed By Defendants.........................11

III. PLAINTIFF'S ATA SECONDARY LIABILITY CLAIMS FAIL ................................12

     A.   The FAC Fails To Plead Defendants "Substantially Assisted" The Paris
          Attack .................................................................................12

     B.   The FAC Fails To Plead The Knowledge Required By Section 2333(d) .............13

IV.  PLAINTIFF'S STATE LAW CLAIM FAILS ..................................................14

V.   THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND......14

CONCLUSION ................................................................................14

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Barnes v. Yahoo!, Inc.*,
　570 F.3d 1096 (9th Cir. 2009) ......................................................................................4

*Blumenthal v. Drudge*,
　992 F. Supp. 44 (D.D.C. 1998) .................................................................................5, 6

*Branch v. Smith*,
　538 U.S. 254 (2003) ....................................................................................................2

*Brill v. Chevron Corp.*,
　2018 WL 3861659 (N.D. Cal. Aug. 14, 2018) ..........................................................14

*Cain v. Twitter Inc.*,
　2018 WL 4657275 (N.D. Cal. Sept. 24, 2018) .........................................................1, 8

*Cohen v. Facebook*,
　252 F. Supp. 3d 140 (E.D.N.Y. 2017) .........................................................................1

*Crosby v. Twitter, Inc.*,
　303 F. Supp. 3d 564 (E.D. Mich. 2018) ............................................................. *passim*

*Doe v. MySpace, Inc.*,
　528 F.3d 413 (5th Cir. 2008) .......................................................................................5

*Epic Sys. Corp. v. Lewis*,
　138 S. Ct. 1612 (2018) .................................................................................................2

*Fair Hous. Council of San Fernando Valley v. Roommates.com*,
　521 F.3d 1157 (9th Cir. 2008) .............................................................................3, 5, 6

*Fields v. Twitter, Inc.*,
　200 F. Supp. 3d 964 (N.D. Cal. 2016) .........................................................................1

*Fields v. Twitter, Inc.*,
　217 F. Supp. 3d 1116 (N.D. Cal. 2016) .......................................................................1

*Force v. Facebook*,
　304 F. Supp. 3d 315 (E.D.N.Y. 2018) ..................................................................1, 2, 4

*Gill v. Arab Bank, PLC*,
　893 F. Supp. 2d 474 (E.D.N.Y. 2012) .........................................................................8

*Global-Tech Appliances, Inc. v. SEB S.A.*,
　563 U.S. 754 (2011) ...................................................................................................10

*Gonzalez v. Google, Inc.*,
    282 F. Supp. 3d 1150 (N.D. Cal. 2017) ........................................................... *passim*

*Gonzalez v. Google, Inc.*,
    2018 WL 3872781 (N.D. Cal. Aug. 15, 2018) ............................................... *passim*

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) ........................................................................... 13

*Hawaii v. Office of Hawaiian Affairs*,
    556 U.S. 163 (2009) ............................................................................................. 3

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ............................................................................................ 9, 10

*Hui v. Castaneda*,
    559 U.S. 799 (2010) ............................................................................................. 3

*Hussein v. Dahabshiil Transfer Servs. Ltd.*,
    230 F. Supp. 3d 167 (S.D.N.Y. 2017) ............................................................ 8, 11

*Jenkins v. Cty. of Riverside*,
    398 F.3d 1093 (9th Cir. 2005) ......................................................................... 8, 12

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) ............................................................................ 5, 6

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ............................................................................. 6

*Kingdomware Techs., Inc. v. United States*,
    136 S. Ct. 1969 (2016) ........................................................................................ 3

*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018) ..................................................................... 11, 12, 13

*MCW, Inc. v. Badbusinessbureau.com, LLC*,
    2004 WL 833595 (N.D. Tex. Apr. 19, 2004) ...................................................... 6

*Owens v. BNP Paribas, SA*,
    897 F.3d 266 (D.C. Cir. 2018) ............................................................................ 7

*Pennie v. Twitter, Inc.*,
    281 F. Supp. 3d 874 (N.D. Cal. Dec. 4, 2017) ........................................... 1, 2, 4

*Pierre v. Att'y Gen.*,
    528 F.3d 180 (3d Cir. 2008) ............................................................................. 10

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011) ............................................................................................ 2

*Radzanower v. Touche Ross & Co.*,
    426 U.S. 148 (1976) ........................................................................................2

*Taamneh v. Twitter, Inc.*,
    2018 WL 5729232 (N.D. Cal. Oct. 29, 2018) ................................................ *passim*

*In re Terrorist Attacks on Sept. 11, 2001*,
    718 F. Supp. 2d 456 (S.D.N.Y. 2010) ............................................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ..........................................................8

*U.S. Sec. & Exch. Comm'n v. Fehn*,
    97 F.3d 1276 (9th Cir. 1996) ..........................................................................13

*United States v. 493,850.00 in U.S. Currency*,
    518 F.3d 1159 (9th Cir. 2008) ........................................................................2

*United States v. Mousavi*,
    604 F.3d 1084 (9th Cir. 2010) ........................................................................10

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007) ..........................................................................5

**Statutes**

18 U.S.C. § 2331 ..............................................................................................8, 11, 12

18 U.S.C. § 2333 ............................................................................................ *passim*

18 U.S.C. § 2339A ..............................................................................................8

18 U.S.C. § 2339B ........................................................................................ *passim*

18 U.S.C. § 2339C ..............................................................................................8

50 U.S.C. § 1705(c) ..............................................................................................10

47 U.S.C. § 230 ............................................................................................ *passim*

Justice Against Sponsors of Terrorism Act,
    Pub. L. No. 114-222, 130 Stat. 852 (enacted Sept. 28, 2016) ......................3

**Other Authorities**

H.R. 3143, 113th Cong., 1st Sess., §§ 2(b), 5 (introduced Sept. 19, 2013) ......4

S. 2040, 114th Cong., §§ 2(b), 5 (introduced Sept. 16, 2015) ........................4

The Opposition presses a legal theory of liability that federal courts have unanimously rejected, now in eleven separate decisions. This Court—in the first of those decisions—held that a suit just like this one is barred by 47 U.S.C. § 230 ("Section 230") of the Communications Decency Act, and three other courts have followed suit.[1] Apart from Section 230, five judges in this district have also rejected Plaintiff's theory on proximate causation grounds.[2] That includes this Court, in a decision affirmed by the Ninth Circuit, *Fields v. Twitter, Inc.*, 881 F.3d 739 (9th Cir. 2018). Plaintiff's counsel not only ignores this growing body of adverse case law, but seeks to *relitigate* it, going so far as to attack the Ninth Circuit's binding decision in *Fields* and asking this Court to disregard it. But the law is clear: Plaintiff's core theory—that Defendants should be liable for every attack committed by ISIS anywhere in the world because they operate communications platforms allegedly used by ISIS operatives—is barred by Section 230 and fails to state a claim under the ATA. Because no amendment can fix these legal deficiencies, the case should be dismissed with prejudice.

## I. SECTION 230 REQUIRES DISMISSAL OF ALL CLAIMS

As Defendants explained (Mot. 5-9), and this Court and numerous other courts have recognized, Section 230 immunizes Defendants against claims that, like those here, seek to hold online service providers liable for third-party content. *See supra* n.1. The Opposition does not dispute that Defendants provide such services and that third parties created the harmful content. Instead, it asserts three meritless arguments: (1) that Congress's uncodified statement of purpose in the 2016 Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222 ("JASTA") somehow impliedly repealed

---

[1] *See Fields v. Twitter, Inc.* ("*Fields II*"), 217 F. Supp. 3d 1116, 1120-29 (N.D. Cal. 2016) (Orrick, J.), *aff'd*, 881 F.3d 739 (9th Cir. 2018); *Fields v. Twitter, Inc.* ("*Fields I*"), 200 F. Supp. 3d 964, 970-76 (N.D. Cal. 2016) (Orrick, J.); *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 888-92 (N.D. Cal. Dec. 4, 2017) (Spero, M.J.), *appeal dismissed*, 9th Cir. No. 17-17536 (Oct. 19, 2018); *Gonzalez v. Google, Inc.* ("*Gonzalez I*"), 282 F. Supp. 3d 1150, 1163-71 (N.D. Cal. 2017) (Ryu, M.J.); *Gonzalez v. Google, Inc.* ("*Gonzalez II*"), 2018 WL 3872781, at *5-13 (N.D. Cal. Aug. 15, 2018) (Ryu, M.J.); *Force v. Facebook*, 304 F. Supp. 3d 315, 319-25 (E.D.N.Y. 2018) (Garaufis, J.), *appeal docketed*, No. 18-397 (2d Cir. Feb. 9, 2018); *Cohen v. Facebook*, 252 F. Supp. 3d 140, 157-58 (E.D.N.Y. 2017) (Garaufis, J.)

[2] *See Fields II*, 217 F. Supp. 3d at 1127; *Fields I*, 200 F. Supp. 3d at 967, 974; *Taamneh v. Twitter, Inc.*, No. 17-CV-04107, Dkt. 75 at 12-14 (N.D. Cal. Oct. 29, 2018) (Chen, J.); *Cain v. Twitter Inc.*, No. 17-CV-02506-JD, 2018 WL 4657275, at *2 (N.D. Cal. Sept. 24, 2018) (Donato, J.); *Gonzalez II*, 2018 WL 3872781, at *13-16; *Pennie*, 281 F. Supp. 3d at 886-88. *See also Crosby v. Twitter, Inc.*, 303 F. Supp. 3d 564, 577-80 (E.D. Mich. 2018).

Section 230 as applied to ATA claims; (2) that Plaintiff's claims do not treat Defendants as "publishers" to the extent that they turn on Defendants' alleged failure to prevent users from opening new versions of previously blocked accounts; and (3) that Defendants are "information content providers" of terrorist content because they allegedly displayed targeted ads from third parties next to that content and allegedly recommended terrorist content to users based on users' viewing history. This and other courts have repeatedly rejected each of these arguments.

## A.    JASTA Did Not Impliedly Repeal Or Abrogate Section 230

Plaintiff's argument that Congress's enactment of JASTA "abrogated" Section 230 (Opp. 5) is frivolous and has been rejected by every court to consider it. *Force*, 304 F. Supp. 3d at 322-23; *Pennie*, 281 F. Supp. 3d at 889; *Gonzalez I*, 282 F. Supp. 3d at 1158-61; *Gonzalez II*, 2018 WL 3872781, at *7.

"It is 'a cardinal principle of statutory construction that repeals by implication are not favored.'" *United States v. 493,850.00 in U.S. Currency*, 518 F.3d 1159, 1167 (9th Cir. 2008). "When confronted with two Acts of Congress allegedly touching on the same topic," a court "is not at 'liberty to pick and choose among congressional enactments' and must instead strive 'to give effect to both.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018). An implied repeal may be found only where two statutes "are in 'irreconcilable conflict,' or where the latter Act covers the whole subject of the earlier one and 'is clearly intended as a substitute.'" *Branch v. Smith*, 538 U.S. 254, 273 (2003). "[I]n either case, the intention of the legislature to repeal must be clear and manifest." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976).

There is no "irreconcilable conflict" between Section 230 and JASTA. The operative provision of JASTA, codified at 18 U.S.C. § 2333(d), states only that, under certain circumstances involving a defined act of international terrorism, "liability *may be asserted* as to any person who aids and abets" or "conspires with the person who committed [the] act," *id.* (emphasis added). It does not say liability is *assured*—such as by creating liability "notwithstanding" existing statutory immunities or defenses. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 621-22 (2011) (absence of "*non*

*obstante*" provision indicates that legislature did not intend a repeal by implication).[3]

Section 230 is entirely consistent with JASTA. Applying an immunity against a claim arising under another statute creates no irreconcilable conflict, but rather simply reflects the ordinary interplay between a provision that authorizes a cause of action and one that creates an immunity. In *Hui v. Castaneda*, 559 U.S. 799, 809-10 (2010), for example, the Supreme Court rejected the argument that applying an older "more comprehensive immunity" to protect defendants from liabilities created by a new law would create any irreconcilable conflict. Courts routinely apply Section 230 to immunize service providers against claims arising under other, including *later*-enacted, federal statutes. *E.g.*, *Fair Hous. Council of San Fernando Valley v. Roommates.com*, 521 F.3d 1157, 1162-75 (9th Cir. 2008) (en banc).

Nor does JASTA evince a clear and manifest intent to override the immunity that Section 230 has provided for decades. Neither the text nor the legislative history of JASTA references Section 230 or online service providers. That silence is particularly significant because, while "JASTA expressly amended the FSIA to modify th[at] immunity provision," it did not "reference any portion of the CDA." *Gonzalez I*, 282 F. Supp. 3d at 1159-60. Congress's handling of foreign sovereign immunity confirms that it understood how to abrogate an immunity when it wanted to, and its failure to say anything about Section 230 confirms that JASTA did not intend to displace or alter the settled application of Section 230 to cases like this.

Plaintiff's implied repeal argument is especially weak because it relies entirely on the prefatory findings and statement of purpose of JASTA, rather than on its substantive provisions. Opp. 3-6 (citing JASTA § 2(a)(6), (b)). Such hortatory preambles are not law in and of themselves, and do not change the operative scope of a statute, much less impliedly repeal pre-existing laws. *See Hawaii v. Office of Hawaiian Affairs*, 556 U.S. 163, 175 (2009); *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977-78 (2016). In any event, the statement in the preamble that injured persons may "*seek* relief" through a newly created cause of action for secondary liability is fully consistent with Section 230, as explained above. Nothing in JASTA, including the preamble, reveals any "clear and

---

[3] Plaintiff does not argue that JASTA covered the whole subject of and was to substitute for Section 230, so the other form of implied repeal is "not at issue." *Gonzalez I*, 282 F. Supp. 3d at 1159.

manifest" intent to override Section 230. *Pennie*, 281 F. Supp. 3d at 889; *Gonzalez I*, 282 F. Supp. 3d at 1158-61; *Force*, 304 F. Supp. 3d at 322-23.[4]

## B. Section 230 Bars Plaintiff's "Functionality" Theory

The Opposition does not deny that the decision to take down an account is a publishing decision. Instead it contends that Section 230 does not apply if the claims focus only on Defendants' alleged failure to prevent removed accounts from "reconstituting." Opp. 20-21. This is neither an accurate description of Plaintiff's claims nor a legitimate basis for evading Section 230. "[W]hat matters" for Section 230 is not the "label[]" placed on the claim but "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-03 (9th Cir. 2009). If "the duty" allegedly violated "derives from the defendant's status or conduct as a 'publisher or speaker,'" that ends the analysis, and Section 230 "precludes liability." *Id.* at 1102. As this Court held in *Fields I* and *II*, the provision of accounts is itself the type of publishing conduct protected by Section 230. That is equally true whether the claim relates to the original creation of accounts or to their supposed "reconstitution." *See Pennie*, 281 F. Supp. 3d at 890; *Gonzalez I*, 282 F. Supp. 3d at 1166-67; *see also* Mot. 5-9. As Magistrate Judge Ryu noted in rejecting the identical theory in *Gonzalez II*, 2018 WL 3872781, at *10*, any claim alleging that Google failed to "ensure that ISIS would not re-establish" accounts necessarily seeks to establish liability based on decisions that are "precisely the kind of activity for which section 230 was meant to provide immunity."

Plaintiff's contention (Opp. 21) that Defendants could have prevented the practice of "reconstituting" accounts in a "content neutral" manner—supposedly by barring users who select usernames "closely related" to those of a blocked account and then "send out a large number of friend/follow requests immediately after account creation"—is doubly meritless. First, it is incorrect

---

[4] Nor does JASTA's prefatory language somehow expand all ATA liability to the limits of the Constitution. Rather, it appears to refer to the personal jurisdiction and extraterritoriality concerns that were raised when JASTA was first being considered. As initially drafted, JASTA would have added a subsection (e) to 18 U.S.C. § 2334 to allow for personal jurisdiction "to the maximum extent permissible under the 5th Amendment to the Constitution of the United States," mirroring the "Purpose" language that Plaintiff cites. *See* S. 2040, 114th Cong., §§ 2(b), 5 (introduced Sept. 16, 2015); H.R. 3143, 113th Cong., 1st Sess., §§ 2(b), 5 (introduced Sept. 19, 2013). The enacted version of JASTA retained the prefatory language but deleted the jurisdictional provision.

that Defendants could have employed such strategies without reviewing third-party content. More importantly, it is well settled that Section 230 immunity applies to claims based on a provider's alleged failure to employ even supposedly content neutral strategies, such as barring users from having multiple screen names, *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007), and using age-verification software to prevent minors from using the platform, *Doe v. MySpace, Inc.*, 528 F.3d 413, 421-22 (5th Cir. 2008). So long as the objective of a strategy is to control what users publish, Section 230 requires dismissal of claims based on an alleged failure to adopt that strategy.

Indeed, Plaintiff's account reconstitution theory would defeat a key objective of Section 230: to "encourage[] interactive computer service providers to self-regulate." *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 408 (6th Cir. 2014). Under this theory, immunity would evaporate as soon as a provider "voluntarily" self-regulated by "delet[ing] an account" (Opp. 20-21), so that any provider who worked to block objectionable content and users in the first instance would thereafter forfeit immunity. That perverse result is precisely what Congress sought to avoid. *Jones*, 755 F.3d at 408.

### C. Targeting Ads And Content Does Not Make Defendants Content Providers

Plaintiff's argument that Defendants acted as "information content providers" by "targeting ads" and displaying "composite" content is also without merit. Opp. 21-23. A service provider does not "develop" content merely by "augmenting the content generally," but rather becomes a content provider only "if it contributes materially to the alleged illegality of the conduct." *Roommates*, 521 F.3d at 1166-68. No such facts are alleged here. Not only were the ads themselves third-party content, and entirely unrelated to Plaintiff's claims, but nothing in the FAC suggests that any such ads contributed to the alleged illegality of any terrorist content. Indeed, Plaintiff admits that Defendants' use of targeted ads applied across their platforms and had no special connection to terrorism. *E.g.*, FAC ¶¶ 630, 634-35. *See generally Gonzalez I*, 282 F. Supp. 3d at 1168-71.[5]

---

[5] Plaintiff misreads the cited cases. Opp. 23. *Blumenthal v. Drudge* rejected the argument that Section 230 is limited to "passive conduit[s]," holding AOL immune even though it solicited, paid for, and "affirmatively promoted" tortious content. 992 F. Supp. 44, 51-52 (D.D.C. 1998). *MCW, Inc. v. Badbusinessbureau.com, LLC*, 2004 WL 833595, at *9 (N.D. Tex. Apr. 19, 2004), held that

It is immaterial that Defendants allegedly "target[ed] advertisements based on viewers and content" using "proprietary algorithms," or that Google "recommend[s] content to users" based on users' viewing histories. FAC ¶¶ 630, 634-36; *see* Opp. 24-25. Nothing in the processes by which ads and recommendations were placed affects the operation of Section 230, because the use of tools that filter or arrange third-party content does not constitute "creation" or "development" of information. *Roommates*, 521 F.3d at 1167-68; *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016). Such neutral activity does not materially contribute to the unlawful nature of any content. *Roommates*, 521 F.3d at 1169 (neutral tools do not affect Section 230 immunity even if used to "carry out what may be unlawful or illicit" activities); *Jones*, 755 F.3d at 415-16; *Gonzalez II*, 2018 WL 3872781, at *10-12 (Google's recommendation algorithm was a neutral tool for purposes of Section 230 immunity).[6] At bottom, the FAC cannot overcome Section 230 because, as Magistrate Judge Ryu explained in addressing similar claims in *Gonzalez II*, the FAC "does not allege that Google's content recommendation features either created or developed ISIS content, or played any role at all in making ISIS's terrorist videos objectionable or unlawful." *Id.* at *11.

## II. ALL OF PLAINTIFF'S ATA DIRECT LIABILITY CLAIMS FAIL UNDER *FIELDS*

Even apart from Section 230, nothing in the Opposition overcomes the multiple arguments in favor of dismissal of the direct liability claims. Plaintiff cannot ignore the Ninth Circuit's ruling in *Fields*, which forecloses any viable theory of proximate cause for the direct liability claims. Nor can Plaintiff allege facts showing that Defendants themselves committed an "act of international

---

defendants acted as "information content providers" because they supplied defamatory titles and headers. The ads here were created by third parties and are not alleged to be unlawful. *See Gonzalez I*, 282 F. Supp. 3d at 1169. And the part of *Roommates* that Plaintiff cites involved a service provider that required users to submit content that allegedly violated federal law. 521 F.3d at 1172. Nothing like that is (or could be) alleged here.

[6] Plaintiff further errs in arguing (Opp. 23-24) that Google is not immune insofar as it allegedly shared advertising revenue with users who posted ISIS-related videos. Plaintiff does not plausibly allege that Google actually shared revenue with ISIS, much less knowingly did so; nor does the FAC allege any causal link between hypothetical revenue sharing and the attack on the La Belle Équipe cafe. *See Gonzalez I*, 282 F. Supp. 3d at 1168-71 (rejecting identical allegations); *Gonzalez II*, 2018 WL 3872781, at *14-16 (same). And in any event, Plaintiff cannot explain how a neutral revenue-sharing policy materially contributes to terrorist activity. Generally paying users for content does not negate Section 230 protection. *Blumenthal*, 992 F. Supp. at 51-52.

terrorism" as required by the ATA. And contrary to Plaintiff's argument, nothing in JASTA altered the legal standards for direct liability under the ATA.

### A.    <u>Plaintiff Does Not Plausibly Allege Proximate Cause</u>

As Defendants showed (Mot. 9-11), the Ninth Circuit's decision in *Fields* requires dismissal of Plaintiff's ATA direct liability claims because Plaintiff has failed to allege a "direct relationship" between any allegedly unlawful conduct by Defendants and the La Belle Équipe attack. Plaintiff's primary response is to argue that *Fields* was wrongly decided, citing a handful of out-of-circuit decisions and claiming that *Fields* did not address the effect of JASTA. Plaintiff makes this claim even though JASTA was enacted almost a year before *Fields*, addresses only secondary liability claims, and did not affect the proximate cause analysis for direct liability. Opp. 4, 11-14. This is a non-starter. As Judge Chen noted late last month in rejecting this identical argument in *Taamneh*, counsel's criticism of *Fields* does not change the fact that "the case is binding precedent on this Court." *See* 2018 WL 5729232, at *7 n.5 (N.D. Cal. Oct. 29, 2018).[7]

Plaintiff's attempt to distinguish *Fields* also is unpersuasive. The Opposition claims that, unlike in *Fields*, Plaintiff has alleged that "the Paris attackers viewed ISIS radicalization and recruitment material posted to Defendants' sites and used Defendants' services." Opp. 14 (citing FAC ¶¶ 383-452). But in the next sentence, it states that "[t]hey also viewed ISIS materials independently of Defendants['] Sites." *Id.* Courts in this district have dismissed materially identical complaints, filed by the same plaintiffs' counsel, in two other cases involving the same La Belle Équipe attack, because those complaints failed to "satisfy the proximate causation standard announced in *Fields*" and so did not "rise[] to the level of plausibly alleging that plaintiffs were injured 'by reason of' [Defendants'] conduct." *Gonzalez II*, 2018 WL 3872781, at *14-15; *Cain*, 2018 WL 4657275, at *2;

---

[7] Even putting aside the Ninth Circuit's conclusive, post-JASTA holding that Section 2333(a)'s "by reason of" language establishes a "direct relationship" standard of causation, JASTA simply has no bearing on this point. The prefatory language from JASTA that Plaintiff cites (Opp. 4)— even if it could alter the operative text, which it cannot, *see infra* at 2-4—merely reflects the addition of the new secondary liability cause of action, such that the ATA now reaches both "direct[]" terrorism (covered already by § 2333(a)) and "indirect[]" terrorism (added via § 2333(d)). *See Owens v. BNP Paribas, SA*, 897 F.3d 266, 277 (D.C. Cir. 2018) (construing "directly or indirectly" language of JASTA preamble as referring to newly added aiding and abetting provision).

*see also Taamneh*, 2018 WL 5729232, at *8-9 (dismissing ATA direct liability claims for failure to allege proximate cause). Indeed, Judge Donato just recently rejected a materially identical complaint arising from the La Belle Équipe attack because the "direct relationship link [was] missing": the materially identical allegations in *Cain* (addressed specifically to Twitter, the only defendant in that case) were "little more than generic statements that some of alleged perpetrators of the attacks were 'active' Twitter users who used the platform to follow 'ISIS-affiliated Twitter accounts' and otherwise 'communicate with others.'" *Cain*, 2018 WL 4657275, at *2. And Judge Chen, in *Taamneh*, found nearly identical "radicalization" allegations against all Defendants to be conclusory and insufficient. *See* 2018 WL 5729232, at *7-9. The FAC here likewise fails to allege facts sufficient to support Plaintiff's direct liability claim.

**B.** **Defendants Did Not Commit An "Act Of International Terrorism"**

Plaintiff does not dispute that, for her ATA direct liability claims to survive, she also must allege facts showing that Defendants committed an "act of international terrorism" under Section 2331(1)(A). Plaintiff does not and cannot plausibly allege the required elements of that defined term.

**1.** **Plaintiff Waived Her Claims Under Sections 2339A And 2339C(c)**

Plaintiff does not even try to defend, and so has waived, her ATA claims based on Section 2339A and Section 2339C(c). *See Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008). These claims also fail on the merits, as Defendants have explained. *See* Mot. 12-16.

**2.** **Plaintiff Fails To Allege A Violation Of Section 2339B**

Plaintiff's direct liability claims based on Section 2339B require allegations that Defendants "knowingly" provided "material support" to ISIS. Courts repeatedly have held that passively offering to the public routine, generally available services that happen to be used incidentally by a member of a foreign terrorist organization does not violate Section 2339B. *See, e.g.*, *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474, 486 (E.D.N.Y. 2012); *accord Hussein v. Dahabshiil Transfer Servs. Ltd.*, 230 F. Supp. 3d 167, 176-77 (S.D.N.Y. 2017) (material support claim "implausible" where it rests on provision of "'routine' banking services" and lacks any showing that banks "had reason to believe that their customers were terrorists or were assisting terrorists"), *aff'd*, 705 F.

App'x 40 (2d Cir. 2017). That is all that Plaintiff alleges here. Although the Opposition tries to argue that Defendants' services were *not* routine, it points only to generalized assertions that ISIS used Defendants' platforms to post violent images allegedly used for radicalizing, recruiting, and other purposes. Opp. 8-9. The suggestion that Defendants should have done more to monitor their platforms and enforce their rules against terrorist content would establish, at most, that Defendants were "passive conduit[s]," not "intentional, knowing[,] and direct participant[s]," which is not enough to violate Section 2339B. *See In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 489 (S.D.N.Y. 2010).

Nor can Plaintiff satisfy the *knowledge* requirement of Section 2339B. As the Opposition concedes (Opp. 14-15), the FAC does not allege that Defendants knew that any specific account or post was ISIS-linked, yet failed to remove that account or post. Nor could it, given Defendants' rules barring terrorists from their sites and their practices of removing pro-ISIS content of which they become aware (*see* Mot. 3 n.4).

Unable to allege scienter, Plaintiff tries to change the law, arguing that under *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ("*HLP*"), any contribution to a terrorist organization is by definition a "knowing" contribution. But *HLP* says no such thing. The plaintiffs there wanted to engage directly with, and support, two designated foreign terrorist organizations in connection with their "political and humanitarian activities." *Id.* at 9-11. They argued that, if they supported only non-violent activities and did not knowingly support terrorist *acts*, they would not be *knowingly* providing material support for terrorism. The Supreme Court disagreed, holding that Section 2339B does not require "specific intent to further the organization's terrorist activities." *Id.* at 16-17. Defendants do not argue otherwise, but the fact that Section 2339B may not require intent to facilitate specific terrorist acts does not change the requirement, confirmed in *HLP* (*id.*), that a defendant has to have had specific knowledge that it was providing services *to an actual foreign terrorist organization*. That is missing here. As in *Crosby v. Twitter, Inc.*, Plaintiff "ha[s] not pointed to any individual or cognizable entity that the [D]efendants plausibly knew to be facilitating or carrying out any acts of terrorism, and to whom the [D]efendants nevertheless knowingly continued to provide services or support to in any form." 303 F. Supp. 3d 564, 577 (E.D. Mich.

2018). This failure defeats any claim based on Section 2339B.

### 3. Plaintiff Fails To Allege A Violation Of IEEPA

Plaintiff does not dispute (Opp. 10) that, to have violated IEEPA, Defendants must have acted "willfully" to violate terrorism sanctions regulations issued under Executive Order 13224 (*see* 50 U.S.C. § 1705(c)). But Plaintiff nowhere alleges that any Defendant knew that it was acting unlawfully. The Opposition tries to avoid this problem by suggesting that IEEPA may be violated with a less culpable mental state—"willful blindness." Opp. 10. This is incorrect. IEEPA is a specific intent statute—that is, it requires proof that the defendant knew that its conduct was unlawful and intended to violate the law. *United States v. Mousavi*, 604 F.3d 1084, 1093-94 (9th Cir. 2010) (IEEPA "requires the government to prove beyond a reasonable doubt that the defendant acted with knowledge 'that his conduct was unlawful'" (citation omitted)). Under IEEPA, the question is not just whether Defendants had "actual knowledge that ISIS uses their sites to conduct terrorist operations," or "exhibited willful blindness" regarding such alleged use, Opp. 10, but whether Defendants took specific actions *knowing that what they were doing was unlawful*. "Willful blindness" sometimes may be used to establish knowledge, *e.g.*, *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 767-70 (2011), but it does not satisfy a statutory specific intent requirement, *see Pierre v. Att'y Gen.*, 528 F.3d 180, 190 (3d Cir. 2008) (en banc).

Even if willful blindness were enough, Plaintiff does not meet that standard. *Global-Tech* makes clear that "willful blindness" requires *conscious avoidance*—that is, "active efforts" to avoid confirming the suspected truth of a known risk. 563 U.S. at 767-70. Plaintiff does not try to advance, much less support with factual allegations, a theory that Defendants engaged in deliberate "active efforts" to avoid confirming they were providing services to ISIS. Plaintiff offers nothing to suggest that Defendants were consciously aware of particular accounts or posts that they suspected of being linked to ISIS, or that allowing such accounts might be unlawful, yet deliberately looked away to avoid confirming those facts. Vague assertions that Defendants were generally aware that ISIS supporters might be among their billions of users worldwide are insufficient to allege willful blindness. *See Hussein*, 230 F. Supp. 3d at 178 (generalized knowledge of risk "is not the same as knowing or deliberately-indifferent support for terror"),

*aff'd*, 705 F. App'x at 41 (affirming dismissal of material support claims where defendants did not know "on any specific occasion" that their services were used in support of terrorist group). Plaintiff's conclusory statement that Defendants "deliberately ignor[ed] ISIS' use of [their] platforms, and yet continu[ed] to provide ISIS with accounts" (Opp. 10) cannot fill this gap, especially given the acknowledgement that Defendants remove users and content suspected to be associated with terrorist groups. *See, e.g.*, FAC ¶¶ 652, 659, 671, 673.

### 4. Plaintiff Fails To Plead The Remaining Required Elements Of "An Act International Terrorism" Committed By Defendants

Even if Plaintiff could allege violations of the criminal laws that the FAC invokes, the direct liability claims would fail because Plaintiff cannot plead the other elements of an "act of international terrorism" under the ATA. As the Second Circuit explained in *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018), this term requires allegation of specific concrete elements (apart from the alleged criminal violation), including the defendant's commission of violent or dangerous acts that "appear to be intended" for one of the terrorist purposes defined in the statute. *Id.* at 325-26; *see also* 18 U.S.C. § 2331(1).

Plaintiff argues that "[t]he Second Circuit never opined … that the material support allegations [in *Linde*]… failed to satisfy the requirements necessary to plausibly establish an 'act of international terrorism'" under section 2331(1). Opp. 8. But that was the central holding of *Linde*, which *rejected* the district court's holding (and instruction) that "proof that [the defendant bank] had violated 18 U.S.C. § 2339B … necessarily proved the bank's commission of an act of international terrorism." 882 F.3d at 325. As the court explained:

> [T]he provision of material support to a terrorist organization does not invariably equate to an act of international terrorism. Specifically, and as relevant here, providing financial services to a known terrorist organization may afford material support to the organization even if the services do not involve violence or endanger life and do not manifest the apparent intent required by § 2331(1)(B).

*Id.* at 326. These additional elements are not, and cannot be, alleged here. Defendants' platforms are not violent, nor could their actions in operating those platforms be seen as intended to intimidate or coerce a population or government. Plaintiff's failure to plead these necessary elements under Sections 2333(a) and 2331(1) independently requires dismissal of the ATA direct liability claims.

# III.   PLAINTIFF'S ATA SECONDARY LIABILITY CLAIMS FAIL

As demonstrated (Mot. 16-18), Plaintiff's secondary liability claims under the ATA (Counts I & II for aiding and abetting and conspiracy) fail.  The Opposition does not respond to Defendants' arguments regarding the conspiracy claim (Count II) and Plaintiff thus has abandoned it.  *Jenkins*, 398 F.3d at 1095 n.4.  As for the aiding and abetting claim, Defendants' motion demonstrated that the FAC fails to plead facts sufficient to establish either of two essential elements: (1) that Defendants provided any assistance, much less substantial assistance, to anyone in connection with the November 2015 Paris attacks, including the assailants who attacked La Belle Équipe café, the other nine operatives involved in other phases of the Paris attacks, or ISIS itself; and (2) that Defendants provided such assistance "knowingly."  Mot. 16-18.  The Opposition offers no theory that could remedy these deficiencies.

## A.   The FAC Fails To Plead Defendants "Substantially Assisted" The Paris Attack

Even accepting Plaintiff's theory that the "person who committed" the La Belle Équipe attack is ISIS, rather than the individual assailants, Opp. 16-17, Plaintiff do not and cannot allege that Defendants provided "substantial assistance" to ISIS *in the commission of that attack*—that is, the "act of international terrorism by which Plaintiff suffered injury.  *See Taamneh*, 2018 WL 5729232, at *10 (text of JASTA "indicates that the injury at issue must have arisen from '*an act* of international terrorism' and that the secondary tortfeasor assisted the principal tortfeasor in committing '*such an act* of international terrorism'").  Allegations that Defendants' actions *generally* assisted ISIS's "radicalization, recruitment, and operational efforts" (Opp. 19) and allowed it broadly to advance its goals are insufficient.  Civil aiding and abetting liability requires "'substantial assistance' *in the commission of the primary violation.*"  *U.S. Sec. & Exch. Comm'n v. Fehn*, 97 F.3d 1276, 1288 (9th Cir. 1996) (emphasis added); *accord Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983) (defendant must "substantially assist the principal violation"); *Crosby*, 303 F. Supp. 3d at 575 (dismissing aiding and abetting claim because there was no "tangible connection between ISIS and the Pulse Night Club shooting").  As in *Crosby*, there is no "suggest[ion] that any of the [D]efendants' representatives were present at the scene, that they had

any 'relationship' with [Abaaoud], or that they were of a mind to see this horrible event take place." 303 F. Supp. 3d at 574.

  *Linde* does not hold otherwise. Plaintiff is correct (Opp. 17) that a defendant must be "'aware' that, by assisting the principal, it is itself assuming a 'role' in terrorist activities," but that "awareness" element is in addition to the *separate* requirement that "the defendant must knowingly and substantially assist the *principal violation*." *Linde*, 882 F.3d at 329 (emphasis added, quotation omitted). In discussing the latter element, *Linde* makes clear that "aiding and abetting focuses on the relationship between the act of international terrorism" that injured the plaintiff (here, the La Belle Équipe attack) "and the secondary actor's alleged supportive conduct." *Id.* at 331. Any allegation of that critical relationship is lacking here.

  **B.**   <u>The FAC Fails To Plead The Knowledge Required By Section 2333(d)</u>

  Plaintiff also does not and cannot plead facts satisfying the exacting *mens rea* required by Section 2333(d). The theory that Defendants "knowingly" provided assistance to ISIS because they allegedly were "generally aware" that they "allow[ed] ISIS to utilize their social media platforms for radicalization, recruitment, and to an extent, operational training" (Opp. 18) misstates the specific knowledge required for an aiding and abetting claim under Section 2333(d)—namely, "*knowing action* that substantially aids tortious conduct." *Halberstam*, 705 F.2d at 478; *see also id.* at 488 (defendant's assistance was "knowing" and reflected both a "deliberate long-term intention to participate in an ongoing illicit enterprise" and a "desire to make the venture succeed"). Plaintiff nowhere alleges that Defendants knew the Paris attackers, were aware of their plans, or knew or intended that Defendants' services allegedly would be used to further criminal acts. And the FAC does not and cannot allege that Defendants *knowingly* assisted ISIS, much less any of the individual attackers, in any way connected to the La Belle Équipe attack. *See Crosby*, 303 F. Supp. 3d at 574 (no aiding and abetting liability where "none of the defendants, or any of their employees or agents, knew anything at all about [the attacker] or his plans before he carried out the horrific attack"); *accord Brill v. Chevron Corp.* 2018 WL 3861659, at *3 (N.D. Cal. Aug. 14, 2018) (*mens rea* element of § 2333(a) not met by allegations that defendant "should have known that it was contributing to

terrorism and chose to ignore the possible consequences"; rather, defendant must have "knowingly supported or encouraged terrorist attacks in Israel").

## IV.     PLAINTIFF'S STATE LAW CLAIM FAILS

The Opposition offers no defense of the state law claim for negligent infliction of emotional distress (Count V), which also requires proximate cause. *Taamneh*, 2018 WL 5729232, at *13 (plaintiffs failed adequately to allege proximate cause for state law claims, even if state law standard is viewed as more forgiving than ATA proximate cause standard); *accord Crosby*, 303 F. Supp. 3d at 577-80; *see also* Mot. 9-10. None of Plaintiff's arguments for avoiding the ATA causation requirement applies to the state law claim, which has been abandoned.

## V.     THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

As Defendants explained (Mot. 18-20), the Court should dismiss this action with prejudice because the legal flaws that require dismissal cannot be cured by any amendment. The Opposition only confirms the futility of amendment. Despite Defendants' arguments for dismissal with prejudice, the Opposition identifies no additional facts that Plaintiff might add to the FAC if allowed to amend, nor does it offer any other reason why dismissal should not be with prejudice. Because no purpose would be served by allowing further amendment, the FAC should be dismissed with prejudice. *See, e.g.*, *Taamneh*, 2018 WL 5729232, at *9, 13 (dismissing with prejudice where plaintiffs' counsel, at the hearing on the motion to dismiss, failed to identify any facts that they could allege that would cure the deficiencies the court noted); Order Dismissing Case, *Cain v. Twitter*, No. 3:17-CV-2506, Dkt. 90 (N.D. Cal. Oct. 22, 2018) (dismissing with prejudice after plaintiffs failed to file an amended complaint).

## CONCLUSION

For all of the reasons set forth above and in Defendants' opening memorandum, all of Plaintiff's claims should be dismissed with prejudice.

Dated: November 9, 2018

Respectfully submitted,

_/s/ Patrick J. Carome_
SETH P. WAXMAN (*pro hac vice*)
seth.waxman@wilmerhale.com
PATRICK J. CAROME (*pro hac vice*)
patrick.carome@wilmerhale.com
ARI HOLTZBLATT (*pro hac vice*)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

MARK D. FLANAGAN (CA SBN 130303)
mark.flanagan@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

***Attorneys for Defendant***
**TWITTER, INC.**

_/s/ Kristin A. Linsley_
KRISTIN A. LINSLEY (CA SBN 154148)
klinsley@gibsondunn.com
JOSEPH A. GORMAN (CA SBN 267553)
jgorman@gibsondunn.com
JOSEPH TARTAKOVSKY (CA SBN 282223)
jtartakovsky@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

***Attorneys for Defendant***
**FACEBOOK, INC.**

_/s/ Brian M. Willen_
BRIAN M. WILLEN (*pro hac vice*)
bwillen@wsgr.com
LAUREN GALLO WHITE (CA SBN 309075)
lwhite@wsgr.com
WILSON SONSINI
   GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas 40th Floor
New York, NY 10019
Telephone: (212) 999-5800

DAVID H. KRAMER (CA SBN 168452)
dkramer@wsgr.com
KELLY M. KNOLL (CA SBN 305579)
kknoll@wsgr.com
WILSON SONSINI
   GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

***Attorneys for Defendant***
**GOOGLE LLC**

**ATTORNEY ATTESTATION**

I, Kristin A. Linsley, am the ECF User whose ID and password are being used to file this Reply In Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.  In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other signatories.

By:  _/s/ *Kristin A. Linsley*_
Kristin A. Linsley

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2018, I electronically filed the above document with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to all registered counsel.

By:    /s/ *Kristin A. Linsley*
           Kristin A. Linsley