# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 1. Notice of Appeal from a Judgment or Order of a United States District Court

Name of U.S. District Court: Northern District of California

U.S. District Court case number: 18-cv-03947

Date case was first filed in U.S. District Court: February 14, 2018

Date of judgment or order you are appealing: April 17, 2019 for ECFs 102 & 103

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

☉ Yes   ○ No   ○ IFP was granted by U.S. District Court

**List all Appellants** *(List **each** party filing the appeal. Do not use "et al." or other abbreviations.)*

Mandy Palmucci

Is this a cross-appeal?   ○ Yes   ☉ No

If Yes, what is the first appeal case number?

Was there a previous appeal in this case?   ☉ Yes   ○ No

If Yes, what is the prior appeal case number? 18-2321

Your mailing address:

26700 Lahser Rd.

Suite 401

City: Southfield   State: MI   Zip Code: 48033

Prisoner Inmate or A Number (if applicable):

**Signature** /s/ Keith L. Altman   **Date** April 29, 2019

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 1**   Rev. 12/01/2018

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:
Mandy Palmucci

Name(s) of counsel (if any):
Keith L. Altman

Address: 26700 Lahser Rd. Suite 401 Southfield, MI 48033

Telephone number(s): (516) 456-5885

Email(s): kaltman@excololaw.com

Is counsel registered for Electronic Filing in the 9th Circuit?   ● Yes   ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:
Twitter, Inc., Google, LLC and Facebook, Inc.

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*To list additional parties and/or counsel, use next page.*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 6**                                   1                             New 12/01/2018

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?    ○ Yes    ○ No

**Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                                    2                          *New 12/01/2018*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANDY PALMUCCI,<br><br>   Plaintiff,<br><br>   v.<br><br>TWITTER INC., et al.,<br><br>   Defendants. | Case No. 18-cv-03947-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 94 |

This is one in a series of cases that seek to hold Twitter, Inc., Google, Inc., and Facebook, Inc. liable under the Antiterrorism Act (ATA) and state law for injuries sustained and deaths caused by acts of terrorism committed by individuals connected to or inspired by ISIS and other federally recognized terrorist organizations. Similar to the plaintiffs in those other cases, Mandy Palmucci contends in her Amended Complaint (AC) that these defendants are responsible for her injuries (in her case, sustained in the November 13, 2015 terror attacks in Paris that killed 130 individuals and injured more than 400) given the material support these defendants' social media platforms provided to ISIS. As awful as those incidents were, numerous decisions have rejected attempts to hold these defendants liable for similar acts of terrorism based on similar theories. The same result is mandated here, and I grant defendants' motion to dismiss with prejudice.

**BACKGROUND**

**I.    FACTUAL BACKGROUND**

Plaintiff Mandy Palmucci was injured during the November 13, 2015, terrorist attacks in Paris that killed 130 individuals and injured more than 400. AC ¶ 1 (Paris Attacks). The AC details in depth the legislative history behind the passage of the Antiterrorism Act (ATA) in 1992 and its amendment following the September 11, 2001 attacks, as well as its amendment in September 2016 as part of the Justice Against Sponsors of Terrorism Act (JASTA). AC ¶¶ 1-7;

42-88. It also discusses the rise of ISIS, its designation as a Foreign Terrorist Organization (FTO) and "specially designated global terrorist" (SDGT) group, and ISIS's use of defendants' social media platforms. *Id*. ¶¶ 11- 32; 89-170. In general, Palmucci alleges that defendants "knowingly and recklessly provided the terrorist group ISIS with accounts to use its social networks as a tool for spreading extremist propaganda, raising funds, and attracting new recruits." *Id*. ¶¶ 12, 26, 27. She alleges how ISIS uses defendants' platforms to recruit new members, fundraise, and "spread its terror propaganda," as well as connect like-minded users through their "unique architecture." FAC ¶¶ 178-206, 215-229, 238-249, 282-380, 637-648. She also alleges that defendants could deny services to ISIS and other terrorist groups, but they refuse to or inadequately do so. *Id*. ¶¶ 649-674.

Palmucci contends that defendants profit from allowing ISIS to use their services, through advertisements (ads) placed on ISIS posts and other locations targeted by defendants. *Id*. ¶¶ 568-570, 596-628. She contends that because ISIS content is shown on defendants' sites with "configured" ads provided by defendants, defendants not only profit from ISIS content on their sites but are also "content providers." *Id*. ¶¶ 629-636.

There are only a few allegations concerning the relationship between defendants' social media platforms and the Paris Attacks. Palmucci alleges that "ISIS used Defendants' platforms to specifically threaten France that it would be attacked for participating in a coalition of nations against ISIS, to celebrate smaller attacks leading up to these major [2015 Paris] attacks, and to transform the operational leaders of the Paris attacks into 'celebrity' among jihadi terrorists in the year leading up to the Paris attacks via videos featuring ISIS exploits in Syria, France, and Belgium." AC ¶ 24. She contends that ISIS used "Defendants' platforms to celebrate the Paris attacks, to intensify the intimidation of the attacks, and to claim credit for the attacks." *Id*. ¶ 25. She alleges that "a major component of the Paris Attack was the messaging disseminated by ISIS prior to, during, and after the events, in which ISIS stated its reasons for committing the terrorist attack against these countries' civilians." *Id*. ¶ 383. The Paris Attacks "involved the use of Defendants' platforms, before and after the attack, to intensify the fear and intimidation that ISIS intended to inflict by this mass casualty attack," and "ISIS used Defendants' platforms and

2

services to facilitate and accomplish all of these things." *Id*. ¶¶ 385-86.

Palmucci asserts a number of facts regarding the terrorists involved in the Paris Attacks and the events of November 13, 2015, but only connects two of the terrorists, Abdelhamid Abaaoud (a Belgian national) and L. Najim Laachraoui (a Moroccan-born resident of Belgium), to any use of defendants' platforms. Abaaoud and Laachraoui are alleged to be acknowledged "ISIS terrorists" who were members of terrorist networks that "used and relied on social media to build and maintain connections with ISIS recruits." *Id*. ¶¶ 388, 413-414. Abaaoud is alleged to have been the "operational leader" of the Paris Attacks and "an active user of social media, including YouTube, Facebook, and Twitter." *Id*. ¶¶ 426, 431. The details around that use are that Abaaoud: (i) opened a Facebook account in 2013; (ii) mentioned his ISIS affiliation in his Facebook page; and (iii) in 2014 posted a link to an ISIS recruitment video on his Facebook page. *Id*. ¶¶ 432, 433, 437, 438. Laachraoui, who allegedly prepared explosives used in the Paris Attacks, is alleged to have had unspecified "social media accounts" showing "that he actively followed ISIS social media accounts and posted links to jihadi YouTube videos on his own accounts as well." *Id*. ¶ 444.

There are no allegations in the AC that Abaaoud, Laachraoui, or any of the terrorists identified as having played roles in the Paris Attacks used any of defendants' social media platforms in the preparation for or carrying out the Attacks. However, there are numerous allegations that following the Paris Attacks, ISIS used YouTube to post videos claiming credit for and praising the attacks and used Twitter to announce release of its magazine articles praising the attacks. *Id*. ¶¶ 527-530, 532, 534, 536.

## II. *FIELDS* AND ITS PROGENY

In two decisions – *Fields v. Twitter, Inc*., 217 F. Supp. 3d 1116 (N.D. Cal. 2016) and *Fields v. Twitter, Inc*., 200 F. Supp. 3d 964 (N.D. Cal. 2016) – I concluded that surviving family members of government contractors killed by an ISIS-identified terrorist could not pursue claims for direct liability under the ATA (or related state law claims) because there was no proximate cause "between Twitter's provision of accounts to ISIS and the deaths of" plaintiffs' family members. *Id*. at 1127. I also held that Twitter was immune from liability for its provision of

3

services to users (even terrorist users) under Section 230 of the Communications Decency Act (CDA), 47 U.S.C. § 230(c)).

The Ninth Circuit affirmed, reaching only the issue of proximate cause under the ATA. *Fields v. Twitter Inc.*, 881 F.3d 739 (9th Cir. 2018). It affirmed the dismissal of the direct liability claims asserted under the ATA because proximate cause under the ATA requires a "direct relationship" between the defendant's conduct and the injury: plaintiffs failed to plead that direct relationship between the terrorist who committed the act or the FTO to which he allegedly belonged and the defendant based simply on "Twitter's provision of communication equipment to ISIS, in the form of Twitter accounts and direct messaging services." *Fields*, 881 F.3d at 749. The Ninth Circuit noted that because Fields pleaded "no facts indicating that Abu Zaid's attack was in any way impacted, helped by, or the result of ISIS's presence on the social network," plaintiffs could not state their claims. *Id.* at 750.

Following the *Fields* decisions, materially similar direct liability claims have been rejected by numerous judges in this District and elsewhere. *See Clayborn v. Twitter, Inc.*, 17-CV-06894-LB, 2018 WL 6839754 (N.D. Cal. Dec. 31, 2018); *Copeland v. Twitter, Inc.*, 352 F. Supp. 3d 965, 17-CV-5851-WHO (N.D. Cal. 2018); *Taamneh v. Twitter, Inc.*, 343 F. Supp. 3d 904, 17-CV-04107-EMC (N.D. Cal. 2018); *Cain v. Twitter Inc.*, 17-CV-02506-JD, 2018 WL 4657275 (N.D. Cal. Sept. 24, 2018); *Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156, 16-CV-03282-DMR (N.D. Cal. 2018) (*Gonzalez II*); *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150 (N.D. Cal. Oct. 23, 2017) (*Gonzalez I*); *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 17-CV-00230-JCS (N.D. Cal. Dec. 4, 2017); *see also Crosby v. Twitter, Inc.*, 303 F. Supp. 3d 564 (E.D. Mich. March 30, 2018).

These same courts have also dismissed the indirect liability (aiding and abetting) claims after specifically considering the Justice Against Sponsors of Terrorism Act (JASTA) amendments to the ATA. *See also Siegel v. HSBC Bank USA, N.A.*, No. 17CV6593 (DLC), 2018 WL 3611967, at *5 (S.D.N.Y. July 27, 2018) (dismissing indirect, aiding and abetting claims against a bank whose services were used by terrorists).[1] Palmucci cites no case that has found that allegations

---

[1] In addition, following my decisions in *Fields*, a number of district court have also found that the allegations at issue were barred as a matter of law as they fall within the immunity provided under

4

materially similar to the ones alleged here were sufficient to state claims under either the direct or indirect prongs of the ATA.

## III. PROCEDURAL BACKGROUND

Palmucci filed this case on February 14, 2018, in the Northern District of Illinois. Dkt. No. 1. The case was transferred to the Northern District of California in June 2018 on defendants' motion to transfer. Dkt. No. 48. Defendants moved to dismiss, and in response Palmucci filed her AC on October 15, 2018. Dkt. No. 90. In it, she asserts six claims for direct and indirect liability under the ATA and a claim for negligent infliction of emotional distress. AC ¶¶ 695-735. Defendants moved to dismiss the AC and the hearing on that motion was set for December 5, 2018.

In light of the similarities between Palmucci's theories of liability and factual allegations here and those in *Copeland et al v. Twitter, Inc. et al.*, No. 17-CV-05851-WHO and *Fields v. Twitter*, No. 16-CV-0213-WHO, I issued an Order on November 30, 2018, requiring plaintiff to "file a supplemental brief not exceeding five pages identifying what material facts differentiate this case from the facts pleaded in *Copeland*, *Fields*" and two other decisions from this District, *Cain v. Twitter Inc.*, No. 17-CV-02506-JD and *Gonzalez v. Google, Inc.*, 16-CV-03282-DMR. *Cain*, in particular, was on point as some of the plaintiffs in that case alleged claims related to the murder of their loved one in the Paris Attacks. *See* Case. No. 17-CV-02506, Dkt. No. 15 (First Amended Complaint) ¶ 515.

I directed Palmucci to explain "why, given those facts, a result different from the *Copeland*, *Fields*, *Cain*, and *Gonzalez* decisions should be reached here . . . . Alternatively, plaintiff may submit on the briefs and I will take the matter off calendar." November 2018 Order. On December 23, 2018, Palmucci notified me that she would rely on her opposition to the motion to dismiss as submitted. Dkt. No. 99. The matter, therefore, was taken off calendar and under

---

Section 230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230(c)(1) (which "immunizes providers of interactive computer services against liability arising from content created by third parties."). *See Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156 (N.D. Cal. 2018); *Force v. Facebook, Inc.*, 304 F. Supp. 3d 315, 329 (E.D.N.Y. 2018); *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140 (E.D.N.Y. 2017).

1  submission.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

As noted above, the allegations in this case are materially similar to the allegations regarding ISIS's general use of defendants' social media platforms to radicalize and promote attacks on civilians. Numerous courts have found similar allegations insufficient to state claims for direct or indirect liability under the ATA and under state law. In addition, the lack of plausible allegations that the terrorists *used* defendants' social media platforms to plan or carry out the Paris Attacks, much less that defendants had some knowledge of that specific use, is fatal to Palmucci's attempt to allege her claims. *See Clayborn v. Twitter, Inc.*, 17-CV-06894-LB, 2018 WL 6839754, at *7 ("alleged links between ISIS and the shooting are ISIS's allegedly claiming credit after the fact, Malik's pledging allegiance to ISIS leader Abu Bakr al-Baghdadi, and Farook's and Malik's alleged radicalization after they were exposed to ISIS content on the defendants' online platforms .

6

. . do not establish a direct relationship between the defendants acts and the plaintiffs' injuries."); *id*. at *9 (dismissing indirect liability claim because, "there are allegations only that the defendants were generally aware that ISIS used their services. There are no allegations that they intended to further ISIS's activities."); *see also Copeland v. Twitter, Inc*., 352 F. Supp. 3d at 974, 976; *Taamneh v. Twitter, Inc*., 343 F. Supp. 3d at 915, 918; *Cain v. Twitter Inc*., 17-CV-02506-JD, 2018 WL 4657275, at *4 (dismissing direct and indirect liability ATA and related state law claims asserted against Twitter for Paris Attacks and other terrorist incidents).

I recognize that some of the District Court cases on which I rely are on appeal and that the Ninth Circuit may reach a different conclusion regarding indirect liability under the ATA (an issue that was not explicitly addressed by the Ninth Circuit in its *Fields* decision). That said, I will follow my prior analyses in the *Fields* and *Copeland* cases. As a result, the motion to dismiss is GRANTED. Palmucci was given an opportunity to explain why – in light of the caselaw identified above – her case should continue. She declined, essentially admitting that no additional facts could be alleged that might state her claims under the ATA or state law. Therefore, the dismissal is WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: April 17, 2019



William H. Orrick
United States District Judge

7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANDY PALMUCCI,<br><br>        Plaintiff,<br><br>    v.<br><br>TWITTER INC., et al.,<br><br>        Defendants. | Case No. 18-cv-03947-WHO<br><br>**JUDGMENT** |

Judgment is entered in accordance with the Court's April 17, 2019 Order Granting the Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: April 17, 2019



William H. Orrick
United States District Judge